Kevin BARNES *v.* STATE of Arkansas

CR 83-146                                    665 S.W.2d 263

Supreme Court of Arkansas
Opinion delivered March 5, 1984

*Paul K. Lancaster* and *Joe K. Hardin,* for appellant.

*Steve Clark,* Atty. Gen., by: *Patricia G. Cherry,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was arrested

just before midnight, February 26, 1983, in Huntsville, Missouri, for speeding, not having a driver's license, and driving while under the influence of intoxicants. He was placed in jail and early the next morning, the 27th, was advised of his *Miranda* rights and then questioned. He stated that the car had been loaned to him by a girlfriend but the police discovered the car was registered in the name of Eddie Hilligas. A sawed-off .22 caliber rifle was found in the car. That afternoon his rights were again explained and he was questioned for a second time. He made no incriminating statements. Shortly after midnight on February 28, appellant sought out a deputy sheriff and, after again being told of his *Miranda* rights, dictated a statement saying that the rifle was found in mid-January at a house he and Barbara Hilligas had rented in Saline County. On March 3, at 5:30 p.m., while being questioned about a forged check, appellant stated that on February 7, 1983, he had accidentally killed Barbara Hilligas and gave directions which enabled other officers to find her body in a remote section of Saline County. Appellant was convicted of first degree murder and sentenced to life in prison. His point on appeal is that the failure of the Missouri officers to reapprise him of his *Miranda* rights after February 28 renders statements made on and after March 3 inadmissible. We affirm the conviction. Jurisdiction is in this Court under Rule 29(1)(b).

Among the factors to be considered in determining the voluntariness of a confession are the age, education, and intelligence of the accused, lack of advice as to his constitutional rights, length of detention, repeated and prolonged nature of questioning, or the use of physical punishment. *Elmore* v. *State,* 267 Ark. 952, 592 S.W.2d 124 (1979). Appellant was thirty-two years old at the time of the trial. The record does not indicate appellant's education level or intelligence quotient but he clearly was able to comprehend and answer questions at trial. This basic comprehension supports the position that he understood the *Miranda* rights when they were explained to him. His prior felony conviction increases the likelihood that such rights were not novel to him. Indeed, appellant does not allege a lack of understanding of the rights, or that he was physically or psychologically coerced, or that he was

promised favorable treatment as an inducement to give a statement. His argument is that the lapse of time was so great between the warning and the statement as to render the statement necessarily involuntary.

We do not have a mechanical rule for measuring the longest permissible interval between the last warning and the statement. In *Upton* v. *State,* 257 Ark. 424, 516 S.W.2d 904 (1974), we said:

> We have never attempted to set a fixed limit on the interval of time which must elapse between advice to an accused of his constitutional rights and an incriminating statement before a new warning is essential to admissibility of the statement. Probably we never will, because we must view the totality of the circumstances in our independent review of the record to determine whether such a statement is voluntarily made. See *Degler* v. *State,* 257 Ark. 388, 517 S.W.2d 515 (1975). We have held that a three-month interval is too long. *Scott* v. *State,* 251 Ark. 918, 475 S.W.2d 699. On the other hand, we held that a three-hour delay between warning and confession was not so long as to require repetition of a warning where other evidence that the confession was voluntary preponderated. *Summerville* v. *State,* 253 Ark. 16, 484 S.W.2d 85. In a factual situation very analogous to this, we found the evidence that a statement was voluntary to be overwhelming in spite of the fact that at least three or four days intervened between the accused's being informed of his constitutional rights and his relating his version of a killing to officers he asked to come to the jail where he was incarcerated. *O'Neal* v. *State,* 253 Ark. 574, 487 S.W.2d 618.

Here, the questioning from February 28 to March 3 was not onerous. Appellant was not subject to lengthy or repeated questioning. In fact, appellant sought out the officers on the 28th to give the statement about finding the rifle.

On March 3, the appellant was being questioned about

a different crime when he said that he wanted to make a statement about Barbara Hilligas. The resulting statement was not a confession obtained by interrogation; it was a statement made to meet a professed need to repent for the killing while still claiming that it was an accident. The following colloquy, taken from appellant's direct examination, is illustrative:

> Q Why did you decide that you needed to talk to them and tell them what you had done?
>
> A I was feeling bitter inside. I was feeling like I was going to explode if I didn't tell somebody what happened.

Under all of the circumstances, the interval between the last warning and the giving of the statement does not prevent the statement from being knowingly and voluntarily made. The trial judge was correct in allowing the statement into evidence.

Affirmed.