REED *v.* HUMPHREYS.

5-3084

373 S. W. 2d 580

Opinion delivered December 2, 1963.

[Rehearing denied Jan. 13, 1964.]

*Mahony & Yocum,* for appellant.

*Spencer & Spencer,* for appellee.

JIM JOHNSON, Associate Justice. This suit is for personal injuries resulting from a collision between an automobile and a truck. On December 11, 1959, appellee William F. Humphreys was one of two passengers in a car driven by Jimmy Clemons en route from Hampton to Calion. Clemons' car collided with the side of a tractor-trailer driven by appellant Augusta Reed, an employee of appellant C. F. Wright. Clemons was killed and the two passengers injured. Appellee filed suit against appellants in Calhoun Circuit Court. Judgment was given on a jury verdict of $4,000.00 for appellee, from which appellee appealed, *Humphreys* v. *Reed,* 234 Ark. 861, 355 S. W. 2d 281, and on March 19, 1962, this court reversed and remanded the cause for a new trial.

On October 31, 1962, after a new trial, the jury returned a verdict for appellee for $30,000.00. In this case appellants have appealed from the judgment on the verdict.

The first point urged for reversal is that the trial court erred in excluding opinion testimony of the Arkansas State Police officer who investigated the collision

During direct examination, after testifying at length about the physical facts he found at the scene of the collision, the officer was asked, ''From the physical facts that you found in your investigation, did you form an opinion as to the point of impact?'' Appellee objected, and court sustained the objection, excluding this opinion testimony.

We have had occasion to review admissibility of opinion testimony several times recently. *Conway* v. *Hudspeth*, 229 Ark. 735, 318 S. W. 2d 137; *Henshaw* v. *Henderson*, 235 Ark. 130, 359 S. W. 2d 436; *Waters* v. *Coleman*, 235 Ark. 559, 361 S. W. 2d 268. In each of these cases this court applied the rule contained in *Mo. Pac. R. Co.* v. *Barry*, 172 Ark. 729, 290 S. W. 942, that, ''The subject-matter of these questions did not call for the opinion of experts. The facts of the occurrence were not beyond the knowledge and experience of any ordinary man to understand and draw conclusions from them, when detailed by eye-witnesses. Therefore the expert testimony was not competent, and the court did not err in so holding.''

The collision here in question was uncomplicated and there were photographs of the automobile, truck, and the scene of the accident, showing gouges and marks on and off the road, as well as testimony of witnesses who vividly described the conditions prevailing and the scene. The police officer's testimony conflicts in part with testimony of some of appellee's witnesses who arrived at the scene before the officer; however, virtually the only fact testified to by the officer not already clearly covered by testimony of witnesses for both appellee and appellants was the location of debris on the highway, which the officer testified about, in detail and at length. As was stated in the *Waters* case, *supra,* ''The facts to be determined were not complicated. This was a relatively simple collision. Certainly there was no evidence to indicate that it was beyond the jury's ability to understand the facts and draw its own conclusions. The state of the record being thus, we find that the trial court erred in allowing appellee to resort to such expert opinion.''

It follows, therefore, in the present case, that the trial court committed no error in excluding the police officer's opinion testimony. In so holding, we take this occasion to restate the rule so succinctly stated in *Cahill* v. *Bradford*, 172 Ark. 69, 287 S. W. 595, "Opinion evidence is not admissible when the fact is susceptible of being adequately exhibited to the jury in the ordinary way."

Appellants next urge that the trial court erred in refusing to give their Instruction No. 14, which reads as follows:

"The defendants have pleaded that the plaintiff and the driver of the car in which he was riding were engaged in a joint enterprise and because thereof, negligence of the driver, if any, is imputable to the plaintiff, that is, that the negligence of the driver, if any,. would have the same effect as negligence of the plaintiff.

"If the plaintiff and the said Clemons, the driver of the automobile, were, at the time of the collision, using the automobile for a common purpose, that is, a mutual purpose, and if each had equal right over the management and operation of the automobile and equal right to govern and direct the movements and conduct of each other with respect to the purpose for which the automobile was being used, then the plaintiff would be responsible for negligence of the driver, if any, and such negligence would, in effect, be the negligence of the plaintiff."

Appellants, in their answer, pleaded that appellee and Clemons, the driver, were engaged in a joint enterprise. In a recent case, *Woodard* v. *Holliday*, 235 Ark. 744, 361 S. W. 2d 744, this court discussed joint enterprise, or joint venture, as follows:

"Prosser on Torts (2d Ed.), § 65, discussing the law of joint enterprises, states that:

" 'The prevailing view is that a joint enterprise requires something beyond the mere association of the parties for a common end, to show a mutual 'right of control' over the operation of the vehicle—or in other

words, an equal right in the passenger to be heard as to the manner in which it is driven. It is not the fact that he does or does not give directions which is important in itself, but rather the understanding between the parties that he has the right to have his wishes respected, to the same extent as the driver. In the absence of circumstances indicating such an understanding, it has been held that . . . fellow servants in the course of their employment, although they may have a common purpose in the ride, are not engaged in a joint enterprise.'

"Many cases have denied the existence of a joint enterprise where nothing was shown except that two fellow employees had been riding together upon a common mission in the course of their employment. [Cases cited.]

"In the case at hand the testimony does tend to establish the first requirement, a common purpose. But they do not show that Yount agreed that Woodard was entitled to an equal voice in the control of the car or that, if the two had been riding in Woodard's automobile, Yount would have had an equal voice in its control. (The latter situation is important, because any control that Woodard might have exercised as a superior employee would not satisfy the requirement of equality of control.) Joint control and joint responsibility should go hand in hand; neither should exist without the other. If the passenger shares the responsibility for the physical control of the vehicle then it is proper for him to share the liability for the driver's negligence. But if the responsibility of control is not shared then the liability ought not to be shared. In the case at bar the trial court's error lies in permitting the jury to infer the existence of the second requirement from proof of the first, which in effect amounted to doing away with the second requirement altogether."

The testimony here relative to the three men traveling together is contained in the direct examination of Randall Kitchens, the other passenger, and appellant. Kitchens testified as follows:

"Q. Do you know the plaintiff in this case, William F. Humphreys?

A. Yes, sir.

Q. Did you know Jimmy Clemons during his lifetime?

A. Yes, sir.

Q. On or about December 11, 1959, were you working with them at the Calion Lumber Company in Calion, Arkansas?

A. Yes, sir.

Q. On that morning did you see both of those boys?

A. Yes, sir.

Q. Where did you meet them?

A. At the Texaco station.

Q. Right down a block here from the courthouse?

A. Yes, sir.

Q. What time of the morning did you all get together?

A. About six-fifteen.

Q. Where were you going that morning?

A. To work at Calion.

Q. Were all of you working for Calion Lumber Company?

A. Yes, sir.

Q. What time did you have to be at work?

A. At seven o'clock.

Q. Whose car were you going down there in?

A. In Jimmy Clemons' car.

Q. And he picked you up at the Texaco station?

A. Yes, sir."

Appellee testified as follows:

"Q. On that morning did you meet Jimmy Clemons and Randall Kitchens, who just testified, to go to the job at Calion?

A. Yes, sir.

Q. Where did you meet them?

A. At the Texaco station on the corner, at the red light.

Q. You all got in Jimmy Clemons' car and went on down toward Calion?

A. Yes, sir."

Appellants forcefully contend that the trial court erred in refusing to give the above quoted instruction which they urge presented appellants' theory of the case. In support of this contention appellants quote from *Western Coal & Mining Co.* v. *Moore,* 96 Ark. 206, 131 S. W. 960, as follows:

"It is error to refuse a specific instruction clearly applying the law to the facts of the case . . . It was the theory of the defendant that the accident was caused by a lump of coal which projected over the side of the car, which struck the prop and knocked it out, thereby causing the rock to fall. *Evidence was adduced by it at the trial to sustain this contention,* and defendant had a right to have this theory of the case presented to the jury in concrete form." [Emphasis ours.]

As brought out in the *Woodard* case, *supra,* joint enterprise requires both (1) common purpose, and (2) equality of control. In the case at bar, review of the testimony clearly reflects common purpose, but there is a total failure of evidence on the matter of equality of control. Failing thus to produce evidence essential to the establishment of joint enterprise, appellants were not entitled to the instruction offered. Accordingly, the trial court was correct in refusing to give such an instruction. Instructions are to be given on the evidence, not on the pleadings.

We have examined very carefully the other instructions, offered or given, complained of by appellants and find no error.

Affirmed.